**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-50901
Summary Calendar
_____

LOUISE SHELBY,

                                        Plaintiff-Appellant,

versus

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant-Appellee.

- - - - - - - - - -
Appeal from the United States District Court
for the Western District of Texas
USDC No. A-97-CV-367-JN
- - - - - - - - - -

July 16, 1999

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Louise Shelby appeals the district court's judgment for the Commissioner in her action pursuant to 42 U.S.C. § 405(g) for review of the administrative law judge's (ALJ) decision denying her disability and SSI benefits.  Shelby argues that the ALJ erred in mischaracterizing the level of education that she had achieved. She argues that the mischaracterization of her education has flawed the entire basis of the ALJ's presumption that she is capable of gainful employment.  She does not explain how the alleged mischaracterization of her education has flawed the ALJ's analysis.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Contrary to Shelby's assertion, the ALJ considered the evidence of her mathematical learning disability, found that she had a learning disorder, and included in the hypothetical to the vocational expert (VE) that she had math skills in the low average range.

Shelby states that the ALJ found that there were no exertional limitations, states that this is contrary to all the evidence, but then she does not state what exertional limitations she contends exist. She argues that the decision of the Commissioner was not based on substantial evidence. She further contends that the proper legal standard was not applied since non-exertional impairments were not given proper consideration. She does not state specifically which non-exertional limitations the ALJ did not consider.

The ALJ presented many non-exertional limitations to the VE, including vision in one eye; an unspecified personality disorder; difficulty with long term visual memory function; reduced problem-solving ability; difficulty with motor strength and speed; impaired high auto sensory integration; and a very mild attention problem. The VE stated that such a person could perform the job of an assembler of small parts. Shelby does not contend what other impairments should have been included in the hypothetical posed by the ALJ to the VE. Visual acuity was addressed by the ALJ informing the VE that she had vision in one eye only. The VE testified that depth perception would not affect the ability to perform the job of small parts assembly. Shelby does not point to any evidence of a lack of visual acuity in her remaining left eye. The VE acknowledged that a significantly higher than expected error

rate in hand-eye coordination would affect the assembly job. Shelby does not point to any evidence in the record of significantly impaired hand-eye coordination. To the contrary, although Dr. Dailey reported that Shelby showed a pattern of motor speed lower than expected, and a pattern of motor strength that was significantly impaired, she performed alternating movements very well, and her coordination was intact in both her fine and gross motor skills.

Shelby argues that the ALJ must analyze both the disabling effect of each of the plaintiff's ailments and the combined effect of all these impairment. She states that this was not done. She contends that the ALJ disregarded the evidence of poor vocational and social adjustment. She takes issue with the ALJ's finding that she had only slight difficulties in maintaining social functioning.

Shelby's personality-related impairments relate to her ability to hold down any type of job in general. Dr. Dailey stated that her tests indicated an absence of acute psychological distress or discomfort, but did suggest what are likely some long-standing personality features that include a tendency towards passive-dependent and passive-aggressive behavior. Dr. Dailey reported that Shelby had moderate psychosocial stressors and that her highest level of adaptive functioning was fair. Dr. Carrasco reported that her personality evaluation was devoid of severe indicators of emotional disturbance or psychopathology. Beth Fowler testified that Shelby had a great attitude and that she never saw her get angry when she made mistakes.

The ALJ found that Shelby's complaints of an inability to perform any type of job were not credible. The ALJ stated that she gave inconsistent statements concerning why she left her last job. He noted that she reported to Dr. Dailey that she left her most recent job because it only paid minimum wage. She also told Dr. Dailey that she was working on a children's book which she hoped to publish, that she wanted to return to school and finish her degree in commercial art, and that she left her job at a telemarketing company because she was burned out on it. The ALJ's finding that Shelby had only slight difficulties in maintaining social functioning was not without support. Shelby does not challenge the ALJ's credibility determination.

Shelby argues that the evidence does not show that she is capable of performing the physical activities that the job of small parts assembler requires. She states that the ALJ found that she could perform this job, although the VE testified that the inability to sequence "less than three items would eliminate the job of assembly work."

Shelby mischaracterizes the VE's testimony. What he actually said was that the inability to sequence "more" than two to three parts would eliminate the job. The VE acknowledged that if the person could not assemble two or three objects in the right order consistently, that would eliminate the assembly job. Shelby points to the testimony of Beth Fowler about Shelby's difficulties collating documents for book mockups and mailouts, and she points to the medical evidence that showed impairment in her psychomotor speed and attention, but she points to no evidence that she could

not sequence even two or three items consistently. Fowler's testimony discussed collating "multiple shoots that went in envelopes" and "dummy copies of a book" which would surely be longer than two or three pages, and "piles of things."

The ALJ relied on the VE's testimony that someone with Shelby's limitations could perform the job of small parts assembly, which job existed in significant numbers in the national economy. This finding is sufficient to meet the ALJ's burden. See Morris v. Bowen, 864 F.2d 333, 335-36 (5th Cir. 1988) (Secretary can meet burden by pointing to testimony that there are a number of jobs suited to the claimant's capabilities which were available to him). The Commissioner's decision is supported by substantial evidence and is AFFIRMED.